UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. P0510025 |
| | ) | (SHIRLEY) |
| MARK BRANDON OWNBY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter came before the undersigned upon Defendant Mark Ownby's Motion to Suppress Evidence filed on August 17, 2007. The parties came before the Court for a suppression hearing on August 22, 2007. Assistant United States Attorney Robert Simpson was present representing the government. Attorney Charles G. Blackard III was present representing Defendant Ownby, who was also present. Jurisdiction of this Court is proper under 28 U.S.C. § 636(a)(4). As the conclusion of the hearing, the Court took the suppression motion under advisement.

**I. Position of the Parties**

Defendant Mark Ownby ("Ownby") is charged with possession of a controlled substance in violation of 36 C.F.R. § 2.35(b)(2). Defendant moves this Court to suppress all evidence illegally obtained by law enforcement officers as a result of searches and/or seizures of Defendant's vehicle on April 22, 2007. Defendant contends his vehicle was unlawfully searched by U.S. Park Ranger Keith Gad ("Ranger Gad") without a warrant and without probable cause,

in violation of the Fourth Amendment.[1]

## II. Suppression Hearing Testimony

The only witness called to testify was Ranger Gad. Ranger Gad was called by the government. For the past year, Ranger Gad has been stationed as a U.S. Park Ranger in the Foothills Parkway West. Prior to his assignment in Great Smoky National Park, he testified he has been a law enforcement officer since 1994 and has worked as a Park Ranger in other national parks, such as Yellowstone National Park and the Everglades in Florida. Ranger Gad testified he was working the weekend of April 21, 2007 and was stationed at the Foothills Parkway Spur, U.S. 441 between Gatlinburg and Pigeon Forge, in the foothills of the Great Smoky Mountains. He testified he was stationed there on that day because it was Rod Run weekend and additional rangers are asked to monitor the area because increased traffic is expected.

Ranger Gad testified April 21, 2007 was a Saturday and he worked that day into the evening. Ranger Gad testified that the weekend of April 21, 2007 was Rod Run weekend and traffic was especially heavy on this part of the Parkway and was backed up going into Pigeon Forge on the spur in the northbound lanes. He stated that traffic was stopped and was not moving at points during his shift. Ranger Gad testified that close, but prior to, midnight on April 21, he was standing at the edge of the woods, keeping an eye on traffic when he heard shouting and hollering from the general direction of Defendant's vehicle. Ranger Gad stated he observed a lot of movement from that direction and was drawn to Defendant's vehicle because of the

---

[1] Since the government neglected to file a response to Defendant Ownby's Motion to Suppress, it is unclear to the Court what the government's position is in regards to the search.

unreasonable noise and the yelling of abusive utterances coming from the vehicle. Thus, Ranger Gad walked over to Defendant's truck to inquire into commotion coming from the vehicle. From the direction of his initial approach, Ranger Gad approached the passenger side of the vehicle. The front window of the passenger side was down. When Ranger Gad came upon the vehicle, he determined there were five people in the vehicle, including the Defendant.

Ranger Gad testified when he approached the vehicle, the first people he saw through the open passenger window were the driver, who was later determined to be Defendant Mark Ownby, and the front-seat passenger. Ranger Gad testified both of these individuals had bloodshot eyes. Ranger Gad then testified he noticed, through the open passenger window, a glass drinking cup in the center console next to the seat where the front-seat passenger was sitting. After noticing the cup, Ranger Gad asked the vehicle's occupants whether they had any drugs or alcohol on them. Defendant and the other occupants stated they did not. Ranger Gad then began asking questions about the glass cup and asked the passenger in the front seat if he could see it. Ranger Gad stated he asked the passenger if he could see the cup as opposed to the Defendant, the owner of the vehicle, because the cup was closest to the passenger, however no one claimed ownership of the cup. Ranger Gad inspected the cup, determined there was a residual amount of clear liquid in it, and then smelled it. Ranger Gad testified the cup "smelled strongly of alcohol" and he determined from the smell, it contained a residual amount of a liquor type alcohol as opposed to beer. After smelling alcohol in the cup, Ranger Gad asked Defendant, as the driver of the vehicle, to pull the vehicle off to the side of the road. After Defendant pulled the vehicle over to the side of the road, Ranger Gad told the occupants to exit the vehicle.

Ranger Gad further testified that, at this point, he was joined by Ranger Flemming, the Little River Supervisor. Ranger Gad stated he called Ranger Flemming over to the scene because of the amount of people in the vehicle. While exiting the vehicle, Defendant advised Ranger Flemming he had a firearm in the vehicle, but also had a permit to carry the firearm. Ranger Gad further testified he saw a firearm in the vehicle attached to the plastic pocket inside the driver side door and the firearm was inside its holster. Ranger Gad inspected the firearm, determined it was loaded, and then proceeded to remove the magazine and made sure there were no rounds in the chamber. After making the firearm safe, Ranger Gad testified he held onto the firearm, either in his pocket or placed it in his vehicle, but later returned it to Defendant.

Ranger Gad then testified after seeing the firearm, he began to search the vehicle and further testified he was looking for other open containers of alcohol, other firearms, or ammunition. He testified he first found a small pack of rolling papers in the center console of the vehicle and he then found a bottle of Grey Goose vodka on the floor behind the front seat and testified the seal on the bottle was broken. He further testified, based on his experience, finding the pack of rolling papers was significant because a majority of the time the papers are used to roll marijuana cigarettes and upon discovering the rolling paper, he suspected this meant there was marijuana in the vehicle. Ranger Gad testified his search of the vehicle was now also looking for marijuana as well as other open containers of alcohol.

Ranger Gad testified he then found 8.3 grams of marijuana inside a gym shoe which was under the rear passenger seat. Ranger Gad stated he put the bag of marijuana into another bag in order to seal it. Ranger Gad further testified when he found the marijuana he asked the occupants of the vehicle who the gym shoe belonged to. Ranger Gad stated that Defendant

4

Ownby said the shoe belonged to him and when Ranger Gad explained to Ownby what was inside the shoe, Ownby stated "I'll accept responsibility for that." Ranger Gad then issued Defendant Ownby a citation for possession of a controlled substance.

On cross-examination, Ranger Gad testified he had no reason to approach Defendant's vehicle until he heard the occupants of the car yelling inappropriate language from the side of the road. He stated he was drawn to the vehicle because of the excessive noise and utterances coming from the vehicle that other drivers could have overheard. Ranger Gad further testified that as he approached the car, Defendant had not committed any crime, but was using "unreasonable noise and abusive utterances." Thus, Ranger Gad stated the stop was not a traffic stop, but that he approached the vehicle to find out why the occupants were yelling and what they were yelling.

When asked about the Grey Goose bottle that was found inside Defendant's vehicle, Ranger Gad testified it was used as evidence of an open container inside the vehicle, but was not used to charge anyone with a violation of the law because of where it was found. Since it was not next to anyone and no one claimed ownership, no one received a citation with respect to the open vodka bottle. He further testified that no one claimed ownership of the glass cup found in the center console, but since it was closest to the front-seat passenger, that person received a citation for the cup.

Ranger Gad further testified once the vehicle was pulled over and the occupants were asked to step out of the vehicle, Ownby was not free to leave the area, no consent was given to search the vehicle, and Ownby was not read his Miranda rights. When Ranger Gad was asked on cross-examination about the rolling papers, defense counsel noted Ranger Gad stated on direct

examination that "rolling papers are normally used for marijuana" and asked whether people can use rolling papers for other, legitimate purposes and Ranger Gad agreed that the papers can have a legal purpose. Ranger Gad also testified when he found the rolling papers, they were located in the center console and did not recall whether the center console was locked.

Ranger Gad stated the search took about a half-hour from when he walked across the street to when he finished writing the citations and let Ownby and the other passengers go. He stated he let them go on their way as he did not feel they were a risk to allow to leave and drive themselves home, thus Ownby was only given a citation and not arrested.

### III. Findings of Fact

The Court notes that there was only one witness and the facts are not really in dispute. In addition, the Court makes its factual findings in the analysis section of the memorandum.

### IV. Analysis

The first issue the Court must address is whether Ranger Gad properly stopped Defendant on April 22, 2007. Defendant argues that the stop was not supported by reasonable suspicion because Ranger Gad observed no illegal activity on behalf of the vehicle to justify the stop and warrantless search of the Defendant. "[T]he Constitution forbids ... not all searches and seizures, but unreasonable searches and seizures." Terry v. Ohio, 392 U.S. 1, 9 (1968). Encounters between police officers and citizens can be grouped into three categories: "consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention, or

6

*Terry* stop, which must be predicated upon reasonable suspicion; and arrests which must be based on probable cause." United States v. Campbell, 486 F.3d 949, 953-54 (6th Cir. 2007) (quoting United States v. Bueno, 21 F.3d 120, 123 (6th Cir. 1994) (quotation marks omitted)).

      *A.*     *Initial Contact*

Based on the Court's review of Ranger Gad's testimony, the Court finds that when Ranger Gad first initiated contact with Defendant Ownby on the Foothills Parkway Spur, the encounter was consensual, and thus, does not constitute a seizure under the Fourth Amendment. The Sixth Circuit has held that "law enforcement officers may approach an individual and ask general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe the person was not free to leave." United States v. Waldon, 206 F.3d 597, 603 (6th Cir. 2000); see also Florida v. Bostick, 501 U.S. 429, 434-35 (1991) (explaining that "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage - as long as the police do not convey a message that compliance is required"). Whether an encounter between a police officer and a citizen is consensual depends on the officer's objective behavior, not on any subjective suspicion of criminal activity. Waldon, 206 F.3d at 603. In other words, even if the officer suspects the citizen of wrongdoing, he may still engage in a consensual encounter with that citizen. Id.

In this case, the Court finds that close to midnight on April 21, 2007, Ranger Gad was standing at the edge of the woods on the Foothills Parkway Spur on US 441 and overheard shouting and hollering from the general direction in which Defendant Ownby's truck was

7

stopped in traffic. Ranger Gad observed unusual movement from that direction and was drawn to Defendant Ownby's vehicle because of the unreasonable noise and abusive language coming from the vehicle. Thus, Ranger Gad walked over to Defendant Ownby's vehicle to inquire into the commotion coming from the vehicle. Ranger Gad approached the passenger side of the vehicle and found the front window of the passenger side was down. Upon approaching the vehicle, Ranger Gad initially engaged the its occupants in conversation and asked them general questions such as "what's going on?" and "what are you up to tonight?". Up until this time, the Court finds that there is nothing in the record to indicate that Ranger Gad conducted himself in an intimidating or coercive manner. Ranger Gad engaged in what appeared to be a relaxed and non-confrontational conversation with Defendant Ownby and the other occupants in his vehicle. Moreover, Ranger Gad gave Defendant Ownby no indication that he was not free to leave and to refuse to respond to questioning. Thus, the Court finds that Ranger Gad's initial encounter with Defendant Ownby and the other occupants of the vehicle was a consensual encounter and does not implicate the Fourth Amendment.

    B.    *Terry Stop*

Immediately following Ranger Gad's initial questioning of Defendant Ownby and the other occupants in the vehicle, Ranger Gad testified he noticed that both Defendant Ownby's and the front-seat passenger's eyes were bloodshot. He stated he then spotted an empty glass drinking cup in the center console of the vehicle. Ranger Gad then asked the passenger in the front seat if he could see the cup. Ranger Gad was given the cup, by the passenger, and then examined the cup and noticed there was a residual amount of liquid in it. After determining the liquid in the cup "smelled strongly of alcohol", Ranger Gad asked Defendant Ownby to pull his

8

vehicle over to the side of the Parkway and asked the occupants to exit the vehicle. The Defendant stated he had a firearm in the vehicle, but had a permit to carry it. He then conducted a search of the vehicle, which revealed a loaded firearm, rolling papers, an open container of Grey Goose vodka, and the marijuana at issue in this case. The Court finds when Ranger Gad pulled Defendant Ownby's vehicle to the side of the Parkway, the encounter between Ranger Gad and Defendant transitioned from a consensual encounter to a temporary, involuntary detention, i.e., a *Terry* stop. Thus, in order for Ranger Gad's stop and subsequent search of the vehicle to be lawful, it must be predicated on reasonable suspicion.

In evaluating the constitutionality of a *Terry* stop, the Court engages in a two-part analysis of the reasonableness of the stop. United States v. Davis, 430 F.3d 545, 554 (6th Cir. 2005). The Court first asks whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion. Id. If the stop was proper, then the Court must determine whether the degree of intrusion was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of officials' conduct given their suspicions and their surrounding circumstances. Id.

   *1. Reasonable Suspicion*

The first part of the analysis is whether there was reasonable suspicion to justify the investigative detention. This determination, which is made in light of the totality of the circumstances, requires the detaining officer to have a particularized and objective basis for suspecting the particular person stopped of criminal activity. See United States v. Caruthers, 458 F.3d 459, 464 (6th Cir. 2006). Reasonable suspicion requires more than just a "mere hunch," but

9

is satisfied by a likelihood of criminal activity less than probable cause, and "falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 277 (2002). In determining the validity of a challenged stop, "the totality of the circumstances - the whole picture - must be taken into account." United States v. Roberts, 986 F.2d 1026, 1029 (6th Cir. 1993) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).

In the present case, the Court finds that there was reasonable suspicion to justify an investigative stop of Defendant Ownby's vehicle. Ranger Gad made a number of objective observations, all of which taken together gave him reasonable suspicion that the occupants of the vehicle were involved in past or present unlawful activity, i.e., driving with an open container of alcohol. 36 C.F.R § 4.14(b) states "[c]arrying ... a bottle, can or other receptacle containing an alcoholic beverage that is open, or has been opened, ... within a motor vehicle in a park area is prohibited."[2] Ranger Gad saw a cup in the center console of the car and upon further examination, determined it contained a small amount of alcohol.[3] Ranger Gad also observed that both Ownby's and the front-seat passenger's eyes were bloodshot, which is a common sign of intoxication. See United States v. Nanny, 745 F.Supp. 475, 482 (M.D. Tenn. 1989); see also United States v. Black, No. 06-6007, 2007 WL 2426487, at *4 (6th Cir. Aug. 28, 2007) (holding an officer has reasonable suspicion to suspect a driver has violated the law, and thus may

---

[2]36 C.F.R. § 4.14(a) states that "Each person within a motor vehicle is responsible for complying with the provisions of this section that pertain to carrying an open container." Thus, the Court finds even though Ranger Gad attributed ownership of the cup to one of the passengers in Ownby's vehicle, as the driver and owner of the vehicle, Ownby also bears responsibility for any open containers of alcohol found by Ranger Gad.

[3]The Court notes, according to Ranger Gad's testimony, which was undisputed by the defense, that consent to examine the cup was freely given by the front-seat passenger upon Ranger Gad's initial request to see the cup.

conduct a *Terry* stop when upon approaching the vehicle, he smells a "strong odor of alcohol coming from the car" and finds the driver in the driver's seat of the vehicle with the keys in the ignition of the vehicle, even if the vehicle is in a parking lot when the officers approach it).

Ranger Gad further testified that in his experience, "loud, boisterous behavior from a vehicle may be a result of drinking." In Cortez, the Supreme Court noted that based on all the information available, "a trained officer draws inferences and makes deductions." Cortez, 449 U.S. at 418. The Court stressed "the imperative of recognizing that, when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for the suspicion of a particular person and for action on that suspicion." Id. at 419. In light of Ranger Gad's experience in law enforcement and patrolling the Parkway during high traffic times such as Rod Run Weekend, it was reasonable for him to infer that Defendant was involved in unlawful activity. Thus, Ranger Gad had a reasonable basis to pull Ownby's vehicle to the side of the Parkway.

      *2. Degree of Intrusion*

Next, the Court must ascertain whether the degree of intrusion by Ranger Gad was reasonable, that is, were the investigative means used the least intrusive means reasonably available. The Supreme Court has explained that once validly stopped for a traffic infraction, "police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures." Maryland v. Wilson, 519 U.S. 408, 412

(1997) (quoting Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977)).[4]  Thus, Ranger Gad was proper in ordering all of the occupants of Defendant's vehicle out of the vehicle once he pulled the vehicle over to the side of the Parkway.

Moreover, the Supreme Court has explained, that during a *Terry* stop, "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime," is permissible.  Terry, 392 U.S. at 27.  In subsequent cases, the Supreme Court extended the constitutionality of *Terry* pat-down frisk of the individual to apply to a *Terry* pat-down search of the vehicle.  See Chimel v. California, 395 U.S. 752 (1969) (in relying explicitly on Terry, holding that when an arrest is made, it is reasonable for the arresting officer to search "the arrestee's person and the area 'within his immediate control', meaning the area from within which he might gain possession of a weapon."); New York v. Belton, 453 U.S. 454, 460 (1981) (holding that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon...''); Michigan v. Long. 463 U.S. 1032, 1049 (1983) (holding that:

> [T]he search of the passenger compartment of an automobile
> limited to those areas in which a weapon may be placed or hidden,
> is permissible if the police officer possesses a reasonable belief
> based on 'specific and articulable facts, which taken together with
> the rational inferences from those facts, reasonably warrant' the
> officers in believing that the suspect may be armed and

---

[4]The Supreme Court, in Maryland v. Wilson, 519 U.S. 408, 413 (1997) extended the rule of Mimms to passengers of lawfully stopped vehicles as well as to drivers. ("We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.").

12

dangerous.)

quoting Terry, 392 U.S. at 21.

In this case, the Court finds that when Ranger Gad asked everyone to exit the vehicle, Defendant Ownby told Ranger Flemming that there was a firearm in the vehicle. Although Defendant Ownby has a valid firearm permit, federal regulations prohibit "carrying or possessing a loaded weapon in a motor vehicle", thus establishing further unlawful activity by the Defendant. 36 C.F.R. § 2.4(b). At this point of the investigative stop, Ranger Gad located the firearm, removed it from the vehicle, and inspected it. The Court finds when Ranger Gad inspected the firearm, he determined it was loaded, and then made it safe by removing the magazine. The Court further finds that Ranger Gad acted reasonably in searching the vehicle for weapons to ensure his and Ranger Flemming's safety particularly after the Defendant advised him there was a firearm in the vehicle. See United States v. Wynn, 148 Fed. Appx. 471, 475, 2005 WL 2173786, at **4 (6th Cir. Sept. 7, 2005) (citing Michigan v. Long, 463 U.S. 1032, 1049-50 (1983)). Although the occupants were outside of the vehicle, Ranger Gad was justified in searching the vehicle for weapons. It is "reasonable that one of the occupants could have gained control over the gun during the investigation and used it against" one of the Park Rangers. Id. For the Rangers' safety and protection, Ranger Gad was justified in his search of Defendant's vehicle to locate the firearm mentioned.

Following discovery of Defendant's loaded firearm, Ranger Gad was justified in searching the vehicle for other firearms. Since a law enforcement officer may anticipate allowing the suspect to reenter the vehicle after the stop, at which time the suspect may retrieve any hidden weapons to use against the officer, the Supreme Court has stated that the scope of the

13

protective search then may include those areas in which a weapon may be placed or hidden. Long, 463 U.S. at 1049-52. This Court finds Ranger Gad also discovered during this search, in hidden areas of the vehicle in which Defendant would have access to once reentering the vehicle, included a small pack of rolling papers in the center console of the vehicle, a bottle of Grey Goose vodka with a broken seal on the floor behind the front seat, and 8.3 grams of marijuana inside a gym shoe located under the rear passenger seat. After finding the marijuana, the Court finds Ranger Gad asked the occupants of the vehicle who the drugs belonged to, to which the Defendant responded he would "accept responsibility" for the drugs. As discussed above, if an officer possesses a reasonable suspicion that the "suspect poses a danger ... and that danger may arise from the possible presence of weapons in the area surrounding a suspect," a search of the passenger compartment of the vehicle does not violate the Constitution. Long, 463 U.S. at 1049. Furthermore, the Supreme Court has stated "[i]f, while conducting a legitimate *Terry* stop, the officer should, ... , discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." Id. at 1050 (citations omitted). It was during Ranger Gad's legitimate search of Defendant's vehicle for weapons that he found the marijuana. Thus, the marijuana was obtained as a result of a constitutional search, and is thus, admissible.

## V. Conclusion

For the foregoing reasons, Defendant Mark Ownby's Motion to Suppress Evidence Obtained on April 22, 2007 is **DENIED.**

**IT IS SO ORDERED.**

ENTER:

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge